UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONY TOOMBS, | ) |
|                Plaintiff, | ) |
| v. | ) No. 1:19-cv-04125-JMS-MJD |
| PAUL TALBOT, et al. | ) |
|                Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Tony Toombs is an Indiana prisoner proceeding on claims for retaliation, deliberate indifference to a serious medical need, and involuntary medical treatment. The defendants are his primary care physician Dr. Paul Talbot, former Director of Nursing Carrie Stephens, and former Health Services Administrator Michelle LaFlower.

The uncontradicted evidence shows that Mr. Toombs did not suffer retaliation, deliberate indifference, or involuntary medical care. Instead, Dr. Talbot treated him for chronic pain and placed him under medical observation as a precaution for a possible heart attack. Furthermore, there is no evidence that Nurse Stephens or former HSA LaFlower had any personal involvement in Mr. Toombs' medical care as it relates to the allegations in his complaint. For these reasons, the defendants' motion for summary judgment is **GRANTED**. Final judgment in accordance with this Order shall now issue.

**I. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific

portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. FACTUAL BACKGROUND

### A. The Complaint

The complaint makes the following allegations. Mr. Toombs is a prisoner at Pendleton Correctional Facility. Dr. Talbot discontinued Mr. Toombs' Tramadol prescription, which he had been taking for pain management. Mr. Toombs then made several requests for medical treatment, which Dr. Talbot and other members of the medical staff found irritating. In retaliation for these requests, on March 29, 2019, Dr. Talbot forced Mr. Toombs into a suicide observation cell and caused him to be beaten and pepper sprayed. HSA LaFlower and Nurse Stephens refused to act within their authority to prevent Dr. Talbot's misconduct. *See generally* dkt. 2 (the complaint).

Based on these allegations, Mr. Toombs is proceeding on a retaliation claim against Dr. Talbot and on deliberate indifference and involuntary medical treatment claims against Dr. Talbot, Nurse Stephens, and HSA LaFlower. Dkt. 9, pp. 2-3 (Order screening the complaint).

### B. Mr. Toombs' Medical History

A neurologist has diagnosed Mr. Toombs with subcostal thoracitis, which is inflammation of the muscles connecting the ribs. *See* dkt. 38-1, para. 7 (Dr. Talbot's affidavit). He frequently experiences pleurodynia, which is sharp pain in the side of the torso in the intercostal muscles, which are located between the ribs. *Id.* at para. 10. Pleurodynia is typically caused by inflammation of fibrous tissue as a result of a viral infection. *Id.* Mr. Toombs has herpes, which is a common viral infection that can affect the inner organs and joints. *Id.* at 11. Mr. Toombs also has gastroesophageal redux syndrome ("GERD").

On February 27, 2019, Mr. Toombs had an appointment with Dr. Talbot and complained of pleurodynia. Dr. Talbot noted that this is a chronic issue. Mr. Toombs stated that neither Mobic nor Neurontin were effective for treating his pain. Dr. Talbot provided Mr. Toombs with injections

3

of Toradol (non-steroidal anti-inflammatory), a prescription for Pamelor (antidepressant for pain), a prescription for baclofen (muscle relaxer and antispasmodic), and a single dose of Tramadol (narcotic pain medication). He continued Mr. Toombs' prescription for acyclovir, which is an antiviral used to treat herpes. *See id.* at paras. 7-16; dkt. 38-2, pp. 1-3 (medical records).

On March 15, 2019, Mr. Toombs complained of chest pains and was taken to the medical unit for urgent care. Once he was there, Mr. Toombs said that he was actually experiencing pleurodynia, but that he had to "play games" to receive treatment from a physician. The nurse provided him with Pepcid to rule out the possibility that his pain was caused by GERD and told the medical staff that Mr. Toombs wanted to see a physician. Dkt. 38-2, pp. 5-6.

On March 18, 2019, Mr. Toombs had an appointment with Dr. Talbot. Dr. Talbot noted that baclofen had provided some relief for Mr. Toombs' pleurodynia. Dr. Talbot told Mr. Toombs that he should allow additional time for baclofen to work. Dr. Talbot continued Mr. Toombs on his medications. He did not prescribe an additional dose of Tramadol. *Id.* at 7-10.

On March 24, 2019, at 2:30 p.m., Mr. Toombs had an appointment with a nurse. Mr. Toombs said that he had "really bad chest pain and my heart stops." He also had symptoms of a respiratory infection. Mr. Toombs' complaints of chest pain and cardiac symptoms were assessed by an EKG, which did not suggest heart problems. The nurse consulted Dr. Talbot, who prescribed antibiotics for the respiratory infection and Toradol injections for pain. He also prescribed a dose of Tramadol for pain and continued Mr. Toombs' other medications. *Id.* at 11-15.

On March 24, 2019, at 9:42 p.m., Mr. Toombs returned to the medical unit with complaints of chest pain. The nurse noted that his EKG earlier that day had been normal, and she offered to provide Mr. Toombs with Tylenol, which he refused. Mr. Toombs also refused all of his evening medications. *Id.* at 16-17.

4

On March 27, 2019, Mr. Toombs returned to the medical unit with complaints of chest pain. He asked that a physician be notified that the chest pain could be a cardiac symptom. The nurse consulted with Dr. Talbot, who asked whether Mr. Toombs was doubled over in pain or responsive to questions. The nurse said that Mr. Toombs was responsive, and Dr. Talbot instructed the nurse to provide Mr. Toombs with Tylenol. *Id.* at 18-21.

On March 28, 2019, just after midnight, Mr. Toombs returned to the medical unit, saying that he was "getting sharp pains in the middle of [his] chest." He asked for more Tramadol. The nurse told him that he could not receive more Tramadol without a prescription from Dr. Talbot. He became argumentative but eventually accepted Tylenol. *Id.* at 22-23.

On March 28, 2019, at 4:26 p.m., Mr. Toombs returned to the medical unit complaining of chest pains and asked for stronger medication. The nurse noted that Mr. Toombs was exhibiting drug-seeking behavior. An hour later, the nurse observed Mr. Toombs "walking, talking, and laughing with all other offenders in no apparent distress." *Id.* at 24-25.

### C. Placement in Medical Observation

On March 29, 2019, Mr. Toombs had an appointment with Dr. Talbot. During this visit, Mr. Toombs reported pleurodynia and chest pain. Dr. Talbot confirmed Mr. Toombs' chest pain by palpitating the area around his sternum. The type of chest pain Mr. Toombs was experiencing, costochondral pain, can be sharp and stabbing, and its outset can be sudden. For these reasons, patients may associate this pain with cardiac issues, such as a heart attack. Dkt. 38-1, para. 29.

Mr. Toombs was placed on a medical hold for observation of his symptoms. This was done due to his recent increase in complaints of chest pain. The decision to house Mr. Toombs in a medical holding cell was done out of precaution so that medical staff could quickly respond to any reported symptoms. *Id.* at para. 30.

There are about eight cells at Pendleton Correctional Facility that are used as medical observation cells. They are down the hall from the medical unit and are easily accessible by medical staff. Nurses deliver medications to the patients in the medical observation cells. Dkt. 38-3, para. 4 (Stephens affidavit). Medical observation is a temporary placement intended to monitor a patient for a specific medical condition. Patients who have expressed repeated symptoms of chest pain or shortness of breath are sometimes placed in medical observation to make them easily accessible by the medical staff in the event of a medical emergency. *Id.* at para. 5.

During his deposition, Mr. Toombs testified that he refused to be placed in his medical observation cell on March 29, 2019. Dkt. 38-1, p. 84. As a result, the correctional staff forced him into the cell, and he says that they beat him and pepper sprayed him as a result of his refusal. *Id.* at 85. Dr. Talbot and Nurse Stephens left the room before this force was used. *Id.*

On April 1, 2019, Mr. Toombs told a nurse that he was feeling better. The nurse reported Mr. Toombs' improved condition to Dr. Talbot, who issued an order to release Mr. Toombs back to his assigned housing unit. Dkt. 38-1, para. 34; dkt. 38-2, pp. 36-37.

### D.  HSA LaFlower

Michelle LaFlower is the former Health Services Administrator at Pendleton Correctional Facility. Dkt. 38-5, para. 1. Her last day at Pendleton Correctional Facility was March 8, 2019. *Id.* at para. 3. She was not at Pendleton Correctional Facility on March 29, 2019, when Mr. Toombs was placed in medical observation. *Id.* She did not respond to any grievances resulting from his placement in medical observation. *Id.*

### E.  Nurse Stephens

Nurse Stephens is the former Director of Nursing at Pendleton Correctional Facility, a position she held from June 18, 2018 until April 12, 2019. Dkt. 38-3, para. 1. Nurse Stephens

responded to two Request for Health Care forms that Mr. Toombs submitted in April 2019. *Id.* at para. 9. The first requested a copy of the policy concerning a patient's right to refuse treatment. *Id.* at para. 10; *see also* dkt. 38-4, p. 1 (first request). The second requested placement in the infirmary so he could be closer to the medical unit. Dkt. 38-3, para. 11; dkt. 38-4, p. 2 (second request). Nurse Stephens responded to both requests. She provided Mr. Toombs with the requested policy and also told him that placement in the infirmary must be approved by the correctional staff. Dkt. 38-3, para. 10-11.

### III. DISCUSSION

#### A. Nurse Stephens and HSA LaFlower

Before wading into the substance of Mr. Toombs' claims, the Court first addresses whether there is any evidence that Nurse Stephens or former HSA LaFlower were "personally involved" in the alleged deliberate indifference or involuntary medical treatment described in the complaint. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). To defeat summary judgment, Mr. Toombs "must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.*

There is no evidence that Nurse Stephens or former HSA LaFlower were personally involved in the alleged misconduct. They did not meet with Mr. Toombs for patient visits, nor did they make the decision to place him under medical observation. Indeed, former HSA LaFlower was not even employed at Pendleton Correctional Facility at the time Mr. Toombs was placed under medical observation. Because there is no causal connection between these defendants and the alleged misconduct, summary judgment is **GRANTED as to Nurse Stephens and former HSA LaFlower**.

### B. Dr. Talbot

#### 1. Retaliation

To prevail on a First Amendment retaliation claim, Mr. Toombs must present evidence that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Mr. Toombs has not presented any evidence that being placed under medical observation would likely deter future First Amendment activity. On this element, courts apply "[a]n objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, [courts] can resolve the issue as a matter of law." *Id.*

In his response and surreply, Mr. Toombs has not directed the Court to any evidence that the conditions of his medical observation cell were any different than the conditions of the cell in his assigned housing unit. *See generally* dkts. 40, 43. Indeed, neither of these filings even addresses his retaliation claims; instead, they focus on his deliberate indifference and involuntary medication claims. *Id.* Regarding the allegation in the complaint that Mr. Toombs was assaulted by correctional staff when he was placed in his medical observation cell, he admitted in his deposition that this force was applied by the correctional staff in response to his insubordination—not because of any protected First Amendment activity. *See* dkt. 38-1, pp. 84-85. Accordingly, the motion for summary judgment is **GRANTED as to his retaliation claim against Dr. Talbot**.

## 2. Deliberate Indifference

### i. Legal Standard

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc).

"[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted).

"To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861, 862 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent

professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation omitted). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

### ii. Mr. Toombs' Claim

Dr. Talbot and other members of the medical staff met with Mr. Toombs frequently between February and April 2019. Dr. Talbot listened to Mr. Toombs' complaints about chronic pain and prescribed different pain management medications in response to his complaints. At various times, he provided Toradol injections, oral anti-inflammatories, a muscle relaxer, antidepressants, and occasionally Tramadol. The medical evidence shows that the muscle relaxer provided some relief to Mr. Toombs, and Dr. Talbot urged him to continue taking this medication to see if his condition would continue to improve.

Despite these interventions, Mr. Toombs complains that Dr. Talbot's refusal to provide Tramadol as a long-term treatment option violated his rights under the Eighth Amendment. But the Seventh Circuit has repeatedly affirmed summary judgment where the plaintiff's only complaint was the failure to provide high-strength narcotics as a treatment for chronic pain. *E.g.*, *Lockett v. Bonson*, 937 F.3d 1016, 1024-25 (7th Cir. 2019) (affirming summary judgment in favor of nurse practitioner who discontinued prisoner's prescription for a strong opioid painkiller in favor of a weaker painkiller to treat pain associated with sickle cell anemia); *Ajala v. University of Wisconsin Hospital and Clinics*, F. App'x 447, 452 (7th Cir. 2020). Further, Mr. Toombs' medical records indicate that he was exhibiting drug-seeking behavior in his repeated requests for Tramadol and that he only appeared to be in severe distress when he was in the medical unit asking for

10

narcotics. *See* dkt. 38-2, pp. 24-25. Accordingly, the motion for summary judgment is **GRANTED as to his deliberate indifference claim against Dr. Talbot**.

### 3. Involuntary Medical Treatment

Competent prisoners retain a limited Fourteenth Amendment right to refuse forced medical treatment while incarcerated. *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). But in this case, Mr. Toombs was not subjected to forced medical treatment. He was merely placed in a cell near the medical unit so that medical staff could promptly treat him in the event of a heart attack. After all, he had repeatedly complained of chest pain and claimed that his heart had stopped beating over the course of the previous two weeks. *E.g.*, dkt. 38-2, pp. 11-15. Accordingly, the motion for summary judgment is **GRANTED as to the involuntary medical treatment claim against Dr. Talbot**.

## IV. CONCLUSION

For the reasons explained above, the motion for summary judgment, dkt. [36], is **GRANTED**. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 11/4/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

TONY TOOMBS
913171
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Sarah Jean Shores-Scisney
KATZ KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com